FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 30, 2016

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ZOE RAQUEL MONTEZ,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br><br>Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:15-CV-00177-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15, 17 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 17. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 17).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

Plaintiff applied for Title XVI supplemental security income (SSI) on August 25, 2011, alleging onset beginning April 20, 2008.  Tr. 21, 151-157.  The application was denied initially, Tr. 81-93, and upon reconsideration, Tr. 95-107.  Plaintiff appeared for a hearing before an administrative law judge (ALJ) on October 4, 2013.  Tr. 37-79.  On December 6, 2013, the ALJ denied Plaintiff's claim.  Tr. 18-36.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 25, 2011.  Tr. 23.  At step two, the ALJ found Plaintiff suffers from the following severe impairments: right knee ACL tear and mild-osteoarthritis, left-shoulder bursitis, asthma, obesity, depressive disorder, post-traumatic stress disorder, borderline-personality disorder, and substance-abuse disorder in early remission.  Tr. 23.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 24.  The ALJ then concluded that the Plaintiff has the RFC to perform light work, with additional limitations.  Tr. 26.  At step four, the ALJ found Plaintiff cannot perform any past relevant work.  Tr. 31.  At step

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as laundry folder, small parts assembler, and bottle packer/caser. Tr. 32. On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act. Tr. 32.

On May 20, 2015, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her SSI under Title XVI of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims; and

2. Whether the ALJ properly weighed the medical opinion evidence.

**A. Adverse Credibility Finding**

Plaintiff contends the ALJ failed to provide specific findings with clear and convincing reasons for discrediting her symptom claims. ECF No. 15 at 12-16.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The Court finds the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not "fully credible." Tr. 27.

### 1. Objective Medical Evidence

The ALJ set out, in detail, the medical evidence regarding Plaintiff's impairments, and ultimately concluded that her allegations were inconsistent with the medical evidence. Tr. 27. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-7p. Minimal objective evidence is a factor which may be relied

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

1    upon in discrediting a claimant's testimony, although it may not be the only factor.

2    *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

3         Plaintiff testified that her right-knee condition causes her constant pain,

4    preventing her from standing for more than twenty minutes at a time and walking

5    more than half a block.  Tr. 58.  If she sits for longer than a half hour, Plaintiff

6    testified that her right leg goes numb.  Tr. 59, 62.  As a result of her right-knee

7    condition, Plaintiff testified that she reclines on the couch most days with her right

8    leg elevated to alleviate the pain.  Tr. 59, 62-63.

9         The medical evidence does not support such severe symptoms.  An MRI of

10   Plaintiff's knee showed an old ACL tear and thinning of the articular cartilage

11   medially.  Tr. 27 (citing Tr. 216-217).  Plaintiff's orthopedist, Arnold Peterson,

12   M.D., found she had range of motion in her leg of 115 degrees, limited only by the

13   girth of her thigh and calf.  Tr. 215.  Plaintiff's medial and lateral ligaments were

14   stable; she had "excellent medial check rein, . . . no medial or lateral tenderness

15   and really nothing to suggest patellofemoral etiology."  Tr. 214.  Dr. Peterson

16   opined that Plaintiff's knee pain was not caused by the ACL tear, but "definitely a

17   function of her weight and the degenerative changes that are occurring."  Tr. 214.

18        Plaintiff cites Dr. Peterson's last statement about degenerative changes in

19   support of her claim that medical imaging corroborates her symptoms.  ECF No.

20   15 at 12.  The imaging suggests thinning of cartilage but "nothing to suggest

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

1  patellofemoral etiology." Tr. 214.  While Plaintiff's knee may cause her some

2  pain, the observations of treatment providers suggest Plaintiff's pain is not as

3  severe as she alleges.  Plaintiff's primary physician, Kingsley Ugorji, M.D., noted

4  that Plaintiff wore a brace on May 14, 2012, and limped throughout the visit.  Tr.

5  277.  The next day, when Plaintiff returned to the clinic because she had provided

6  water in place of urine for a urinalysis, Plaintiff was not wearing her knee brace

7  and "walk[ed] well . . . with no obvious pain / dyscomfort [sic] on her right knee."

8  Tr. 277.  Plaintiff contends she does not wear the brace at all times because it

9  increases the pain in her knee.  ECF No. 15 at 12-13 (citing Tr. 277, 302).  Taking

10  into account Plaintiff's explanation, the fact that she walked well and exhibited no

11  pain or discomfort suggests her symptoms are not as severe as she alleges.  The

12  examination Kathryn Moore, PA-C, performed also calls into question the severity

13  of Plaintiff's symptoms.  Tr. 302.  During that examination, Ms. Moore observed

14  Plaintiff dramatize her pain and, curiously, the pain changed locations throughout

15  the exam.  Tr. 303.  These inconsistencies in the medical record constitute

16  sufficient evidence from which the ALJ could conclude Plaintiff's symptoms were

17  not as severe as she alleged.

18      2.   *Poor Work Record*

19      The ALJ found that Plaintiff's poor work record also diminished her

20  credibility.  Tr. 28.  Evidence of a poor work history that suggests a claimant is not

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1    motivated to work is a permissible reason to discredit a claimant's testimony that

2    she is unable to work. *Thomas*, 278 F.3d at 959.  The ALJ noted that in the 15

3    years preceding Plaintiff's application for SSI, Plaintiff's only qualifying work

4    history was as a survey worker, a job she held for about 17 months.  Tr. 31, 92.

5         Plaintiff contends the ALJ's reasoning is unclear.  ECF No. 15 at 13.  An

6    ALJ's findings are sufficiently specific when they permit a reviewing court to

7    conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas*,

8    278 F.3d at 958.  Here, the ALJ specifically referenced Plaintiff's "poor work

9    record," as a reason for discrediting her.  Tr. 28.  As the ALJ later elaborated,

10   Plaintiff has held a job for only 17 months in the 15 years prior to filing for SSI.

11   Tr. 31.  The ALJ's finding is sufficiently clear for this Court to review and, upon

12   review, the Court concludes the ALJ offered a clear and convincing reason for

13   discrediting Plaintiff.

14        *3.    Histrionic and Dramatic Behavior*

15        The ALJ found Plaintiff's histrionic and dramatic behavior also diminished

16   her credibility.  A Plaintiff's tendency to exaggerate is a legitimate concern in

17   determining credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir.

18   2001).  As an example of Plaintiff's tendencies, the ALJ recited a chart note dated

19   May 15, 2012.  Tr. 28 (citing Tr. 277).  On that day, Plaintiff returned to Dr.

20   Ugorji's clinic to provide a urine sample because the previous day she provided

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

water in lieu of urine.  Tr. 277.  Upon returning, Plaintiff provided a diluted urine

sample, which tested positive for cannabis.  Tr. 277.  When confronted, Plaintiff

told Dr. Ugorji, "you can not stop my meds, you have to wean me off, I can not

stop using cannabis, but I am in pain.  I need something that works for pain.  If you

do not give me my meds I will go buy them on the street."  Tr. 277.  Kathryn

Moore, PA-C, observed similar behavior when she attempted to examine

Plaintiff's knee.  Tr. 303.  Ms. Moore found examining Plaintiff "difficult with

[her] dramatic pain behaviors and changing areas of pain in the knee."  Tr. 303.

Plaintiff's dramatic behavior diminishes her credibility and constitutes a clear and

convincing reason for discrediting her.  *Tonapetyan*, 242 F.3d at 1148.

Plaintiff challenges the ALJ discrediting her for attempting to obtain pain

relief.  ECF No. 15 at 13.  Contrary to her claim, the ALJ did not discredit Plaintiff

for seeking relief for her pain.  The ALJ discredited Plaintiff for dramatic behavior

that suggested she exaggerated her symptoms to obtain pain medications.  As

explained above, the ALJ's finding constitutes a clear and convincing reason for

discrediting Plaintiff.

### 4.    Inconsistent Statements

The ALJ found Plaintiff inconsistently reported her substance use.  Tr. 28.

An ALJ may employ "ordinary techniques of credibility evaluation, such as the

claimant's reputation for lying . . . and other testimony by the claimant that appears

less than candid" when assessing the Plaintiff's credibility. *See Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012); *see also Thomas*, 278 F.3d at 959 ("[T]he ALJ found that [the claimant] had not been a reliable historian, presenting conflicting information about her drug and alcohol usage . . . . [T]his lack of candor carries over to her description of physical pain." (internal quotation marks omitted)).

For example, the chart notes from November 2011, indicated Plaintiff admitted to smoking marijuana daily but last using other drugs 12 or 15 years ago. Tr. 234. In May of 2012, Plaintiff reported last using a "street drug" two years prior. Tr. 259. Regardless of whether marijuana is considered a "street drug," Plaintiff's report is inconsistent with her report in November 2011. *Compare* Tr. 234 *with* Tr. 259. Both reports are inconsistent with what Plaintiff told Gregory Charboneau, Ed.D., in November 2012. At that exam, Plaintiff reported quitting "all drugs seven years ago." Tr. 282. The ALJ did not err when she found such contradictory evidence raised questions as to the reliability of Plaintiff's symptom claims. *Thomas*, 278 F.3d at 959.

Plaintiff contends the ALJ may not discredit her solely for abusing substances. But the ALJ did not discredit her for abusing substances; the ALJ discredited her for making inconsistent statements about her substance abuse. Next, Plaintiff contends the record does not clearly establish any inconsistencies.

ECF No. 15 at 13.  Plaintiff posits that the inconsistent reports of substance use

may result from her medicinal use of marijuana.  Ostensibly, Plaintiff believes

some providers catalogued her use of marijuana as substance abuse and others did

not, leading to the inconsistent record.  But the chart notes the ALJ cited to and

discussed above distinguish between marijuana and other drugs Plaintiff abused.

*Compare* Tr. 234 *with* Tr. 259.  Accordingly, the ALJ offered a clear and

convincing reason for discrediting Plaintiff's symptom claims.  Tr. 28; *Thomas*,

278 F.3d at 959.

   5.   *Medical Improvement*

   The ALJ found that Plaintiff's symptoms improved during the period she

sought treatment.  Tr. 28.  While "it is error to reject a claimant's testimony merely

because symptoms wax and wane in the course of treatment," an ALJ may rely on

examples of "broader development" of improvement when finding a claimant's

testimony not credible.  *Garrison*, 759 F.3d at 1017-18 ("While ALJs obviously

must rely on examples to show why they do not believe that a claimant is credible,

the data points they choose must in fact constitute examples of a broader

development to satisfy the applicable 'clear and convincing' standard.").  Here, the

ALJ noted that since November 2011, Plaintiff's depression improved.  Tr. 28

(citing Tr. 234).  In November 2011, Plaintiff reported her medication seemed to

be helping.  Tr. 234.  In February 2012, Plaintiff reported feeling good mood-wise,

and was quite happy in a new relationship.  Tr. 238.  A year later, Plaintiff reported

her depression was a one and her anxiety a two on a scale of ten, with ten being the

worst.  Tr. 339.  In July 2013, Plaintiff again reported her depression as a one on a

scale of ten.  Tr. 393.  During that same session Plaintiff was discharged from

counseling treatment because she did not wish to work on anything else at that

time.  Tr. 393.

Plaintiff contends that she remained symptomatic.  ECF No. 15 at 13.  As

evidence, she cites to a check mark in a chart note that indicated she was

symptomatic in March of 2012.  Tr. 325.  But the same chart indicated Plaintiff's

depression was in partial remission.  Tr. 324.  Regardless, the single note is an

outlier in a trend demonstrating Plaintiff's improvement.  Tr. 234, 238, 339, 393.

Accordingly, the ALJ provided another specific, clear, and convincing reason for

not fully crediting Plaintiff's symptom claims.

### 6.    *Daily Activities*

The ALJ found that Plaintiff engaged in daily activities inconsistent with her

subjective complaints.  Tr. 29.  A claimant's reported daily activities can form the

basis for an adverse credibility determination if they consist of activities that

contradict the claimant's "other testimony" or if those activities are transferable to

a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v.

Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

1  adverse credibility finding "if a claimant is able to spend a substantial part of his

2  day engaged in pursuits involving the performance of physical functions that are

3  transferable to a work setting."). "While a claimant need not vegetate in a dark

4  room in order to be eligible for benefits, the ALJ may discredit a claimant's

5  testimony when the claimant reports participation in everyday activities indicating

6  capacities that are transferable to a work setting" or when activities "contradict

7  claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal

8  quotation marks and citations omitted).

9        The ALJ determined that Plaintiff's daily activities indicated she was

10 capable of full-time work at semi-skilled tasks with limited social contact. Tr. 29.

11 Plaintiff told Kathryn Moore, PA-C that she had recurrent left shoulder and neck

12 pain, which radiated to her head. Tr. 290. She reported to another provider that an

13 MRI showed her rotator cuff was calcified and that she had bursitis and bone spurs.

14 Tr. 393. But Plaintiff reported enjoying cooking and preparing complex meals.

15 Tr. 282. She reported performing household chores, including laundry, and

16 picking up the bathroom and living room. Tr. 282. She told the Social Security

17 Administration that she fed and watered her cats and cleaned their litter box. Tr.

18 185. In addition, Plaintiff reported traveling by public transportation, shopping for

19 food, and completing two, full-time quarters of college. Tr. 58, 65, 187-188. The

20

1   ALJ concluded Plaintiff's daily activities demonstrate she is not as limited as she

2   alleged.  Tr. 29.

3        Plaintiff challenges the ALJ's finding.  ECF No. 15 at 14.  Regarding the

4   meals she prepares, Plaintiff notes that the ALJ does not know what constitutes a

5   complex meal, and fails to recognize that she enjoys preparing complex meals "as

6   long as she does not have to stand for long periods."  Tr. 282.  Plaintiff admits she

7   uses the bus, shops for food, and takes care of her pets, but contends these

8   activities are not inconsistent with her disability.  Plaintiff also admits she took two

9   quarters of community college, but notes the classes were online and the record

10  does not disclose how well she did in those classes.

11       Regardless of how long Plaintiff can stand, her ability to prepare complex

12  meals, pick up around the house, and perform household chores like laundry

13  suggest her shoulder pain is not as debilitating as she alleges.  Plaintiff's

14  completion of her online community college classes, regardless of her actual grade,

15  her ability to use and regular use of public transportation, indicate she is not as

16  limited in her social interactions as she alleges.

17       Moreover, even if the ALJ erred in discrediting Plaintiff based on her daily

18  activities, the ALJ's other reasons constitute clear and convincing reasons for

19  finding Plaintiff not entirely credible.  *See Carmickle v. Comm'r of Soc. Sec.*, 533

20  F.3d 1155, 1162-1163 (9th Cir. 2008).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

**B. Medical Opinion Evidence**

Plaintiff faults the ALJ for discounting the opinions of examining physicians John Severinghaus, Ph.D., and Gregory Charboneau, Ed.D.  ECF No. 15 at 17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

1    (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

2    examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

3    may only reject it by providing specific and legitimate reasons that are supported

4    by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-

5    31).

6         Dr. John Robinson, Dr. Diane Fligstein, and Dr. Marian Martin contradicted

7    the opinions of Dr. Severinghaus and Dr. Charboneau.  Accordingly, the ALJ was

8    required to offer specific and legitimate reasons supported by substantial evidence

9    to discount their opinions.

10        *1.    John Severinghaus, Ph.D.*

11        Examining physician Dr. Severinghaus assessed Plaintiff with a GAF score

12   between 45 and 55, indicating severe to moderate functional limitations and opined

13   that Plaintiff has moderate to marked limitations in social function, pace, and

14   persistence.  Tr. 262-63.  The ALJ did not accord these opinions any significant

15   weight.  Tr. 30.

16        First, the ALJ disregarded the GAF score because it is vague and highly

17   subjective.  Tr. 30.  More importantly, the ALJ noted that GAF scores take into

18   account factors she cannot consider under the regulations, like socioeconomic

19   considerations.  Tr. 30.  This is why the Commissioner has explicitly disavowed

20   use of GAF scores as indicators of disability.  65 Fed. Reg. 50746-01, 50765

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

1  (August 21, 2000) ("The GAF scale . . . does not have a direct correlation to the

2  severity requirements in our mental disorder listing.").  Moreover, the GAF scale is

3  no longer included in the DSM–V.[1]  The Court finds the ALJ's reasoning specific

4  and legitimate.

5       Second, the ALJ discounted Dr. Severinghaus' opinion about Plaintiff's

6  social functioning, pace, and persistence because his opinion appeared to be unduly

7  based on Plaintiff's testimony.  Tr. 30.  A physician's opinion may be rejected if it

8  is based on a claimant's subjective complaints which were properly discounted.

9  *Tonapetyan*, 242 F.3d at 1149.  Here, Dr. Severinghaus relied on Plaintiff's

10  discredited testimony which, the ALJ found was not supported by the longitudinal

11  medical evidence and she properly discredited.  This is a specific and legitimate

12  reason for discounting Dr. Severinghaus' opinion.  *Id.*

13       Last, the ALJ discounted Dr. Severinghaus' opinion because it conflicts with

14  the evidence, including Plaintiff's testimony that she was able to complete two

15  _____

16  [1] "It was recommended that the GAF be dropped from the DSM-5 for several

17  reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide

18  risk, and disabilities in its descriptors) and questionable psychometrics in routine

19  practice." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 5TH Ed.

20  at 16.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

quarters of fulltime college coursework in 2011.  Tr. 30.  Such an inconsistency between a physician's opinion and a claimant's daily activities constitutes a specific and legitimate reason to discount the physician's opinion.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999).

Plaintiff contests the ALJ's findings, contending Dr. Severinghaus' mental status examination (MSE) corroborates his opinion.  ECF No. 15 at 17.  But as even Dr. Severinghaus acknowledges, "there are no indications on interview or mental status of obvious cognitive deficits."  Tr. 263.  The moderate to marked limitations he placed on Plaintiff's pace and persistence stem from her "perceptions of chronic pain, anxiety around others, and distrust for others."  Tr. 263.  The MSE did not identify or evidence Plaintiff's perceptions, anxiety, or distrust for and around others.  Rather, Dr. Severinghaus based that opinion on Plaintiff's testimony.  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 605.  As discussed above, the ALJ properly discredited Plaintiff's symptom claims.  Because Dr. Severinghaus relied on that testimony, the ALJ accorded his opinion no significant weight.  *Id.*; Tr. 30.

Moreover, Plaintiff does not contest the ALJ's finding that the longitudinal medical record contradicts Dr. Severinghaus, which serves as an additional reason

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

1  for which the ALJ rejected Dr. Severinghaus' opinion.  *Batson v. Comm'r of Soc.*

2  *Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The Court finds the ALJ offered

3  specific and legitimate reasons supported by substantial evidence for rejecting the

4  opinion of Dr. Severinghaus.

5       *2.   Gregory Charboneau, Ed.D.*

6       Dr. Charboneau opined that Plaintiff is severely limited in her ability to

7  perform any basic work activities and assigned Plaintiff a GAF score of 30,

8  indicating a serious functional impairment.  Tr. 283.  The ALJ accorded Dr.

9  Charboneau's opinion no weight.  Tr. 30.

10      First, the ALJ discounted Dr. Charboneau's opinion because it was based

11  entirely on Plaintiff's discredited testimony.  Tr. 30.  A physician's opinion may be

12  rejected if it is based on a claimant's subjective complaints which were properly

13  discounted.  *Tonapetyan*, 242 F.3d at 1149.  Because the ALJ previously found

14  Plaintiff unreliable and her symptom claims exaggerated, this is a specific and

15  legitimate reason for discounting Dr. Charboneau's opinion.  *Tonapetyan*, 242 F.3d

16  at 1149.

17      Second, the ALJ also discounted Dr. Charboneau's opinion because it

18  conflicted with his own treatment notes.  Tr. 30 (citing Tr. 284).  A physician's

19  opinion may be rejected if it is unsupported by the physician's treatment notes.

20  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23

rejection of physician's opinion as unsupported by physician's treatment notes).

Dr. Charboneau's opinion conflicted with his own MSE, which indicated Plaintiff was fully oriented, had intact memory, and was able to follow a three-step command. Tr. 30 (citing Tr. 284). Dr. Charboneau noted that although Plaintiff had difficulty following the conversation at times, she was oriented, her remote memory was intact, she was aware of current events, was able to follow a three-step command, and exhibited good abstract thinking and judgment. Tr. 284-285. The ALJ found these observations were inconsistent with the extreme GAF score Dr. Charboneau diagnosed and the limitations he assessed. Tr. 30. This constitutes a specific and legitimate reason for discount Dr. Charboneau's opinion. *See Connett*, 340 F.3d at 875.

Plaintiff challenges the ALJ's findings, contending Dr. Charboneau made personal observations of her thought process and content, concentration, and insight and judgment. ECF No. 15 at 17. Those observations, Plaintiff contends, support Dr. Charboneau's opinion. The portions of the MSE to the contrary are not representative of the record as a whole, according to Plaintiff. Plaintiff's alternative interpretation of the MSE is insufficient to reverse the ALJ. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas*, 278

F.3d at 954.  The ALJ's interpretation was a rational one, to which the Court

defers.  *See Morgan*, 169 F.3d at 599.

The Court finds the ALJ offered specific and legitimate reasons supported

by substantial evidence for rejecting the opinion of Dr. Charboneau.

## CONCLUSION

The ALJ's decision is supported by substantial evidence and free of legal

error.

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED.**

2.    Defendant's Motion for Summary Judgment (ECF No. 17) is

**GRANTED**.

The District Court Executive is directed to file this Order, enter

**JUDGMENT FOR THE DEFENDANT,** provide copies to counsel, and **CLOSE**

the file.

DATED this Thursday, June 30, 2016.

*s/ Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25